IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHRISTOPHER M. KEARNS,

                    Plaintiff,

          v.                              CASE NO. 05-3491-SAC

JOHNSON COUNTY ADULT
DETENTION CENTER, et al.,

                    Defendants.

### MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. 1983, was filed by an inmate of the Johnson County Adult Detention Center, Olathe, Kansas (JCADC) against the JCADC, the Neosho County Jail, Dr. Gamble, and Prison Health Services (PHS). Plaintiff claims in his original complaint that defendants subjected him to cruel and unusual punishment and medical malpractice while he was confined at each of the two county jails by denying and delaying medical treatment for ear infections. He alleges he has suffered pain and permanent hearing loss as a result, and seeks actual and punitive damages, including $100,000 for "future hospital bills."


### FILING FEE

Plaintiff has filed two motions for leave to proceed without prepayment of fees (Docs. 2 & 5), the latest indicating

his current prison account balance is $0.  However, neither includes a certification of all transactions in his inmate account over the preceding 6 months as required by 28 U.S.C. 1915(a)(2).

## SCREENING OF COMPLAINT

Because plaintiff is a prisoner, the court screened his complaint as required under 28 U.S.C. 1915A(a) and is required to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. 1915A(b).  The court issued an order dated January 25, 2006, finding this action was subject to being dismissed because plaintiff had not adequately pled exhaustion of administrative remedies as required under 42 U.S.C. 1997e(a), and failed to name as defendants persons who personally participated in the acts of which he complains.  Plaintiff was given an opportunity to amend his complaint to avoid dismissal for the reasons stated in the court's prior order.

Since then, plaintiff has filed a second motion for appointment of counsel (Doc. 7), a "Summary of Grievances," (Doc. 8), and a "Motion to Amend Claim" (Doc. 9).  The two latter pleadings were filed as Supplements to the Complaint in Response to Court Order.  Having examined these filings, the

court finds as follows.


**EXHAUSTION**

The court has reviewed all plaintiff's filings to determine whether or not he has complied with the court's prior order to show exhaustion. Plaintiff has not submitted any copies of grievances filed by him at either the Neosho County Jail or the JCADC seeking administrative relief on his claim[1] of being denied medical treatment for painful ear infections. Instead, he filed his "Summary of Grievances" (Doc. 8) in which he states that Neosho County "did not have grievances," and that he started filing grievances upon his return to JCADC on December 24, 2003. He additionally alleges he cannot obtain copies, but "went as far as Major." He alleges "officials" responded only that "you will see a Doctor as soon as possible." These allegations do not describe what claim he raised in his grievance, the date it was submitted, to whom it was addressed, who responded, or whether the decision was appealed. Plaintiff's allegations regarding exhaustion can hardly be

---

[1]

Plaintiff exhibits a few forms he submitted at JCADC requesting access to his medical records and addresses.

The court takes judicial notice of an exhibit (Doc. 7, Attach. 10) filed by plaintiff in Kearns v. JCADC, Case No. 05-3490 (D.Kan. Feb. 22, 2006), probably by mistake, which is a copy of his "Request for Medical Care" at the JCADC dated December 8, 2003. His statement on this form was: "My ears have been bothering me and I think I'm having bad allergy problem. Fluid is in my right ear, and its starting to hurt bad." The form indicates the request was "picked up" on December 9, 2003, and "handled" on the same date. A charge of $5.00 for "Nurse Clinic" is also indicated.

called a description "with specificity" of the "administrative proceeding and its outcome."  See Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004).  The court thus finds that petitioner has not complied with its order to present sufficient evidence that he has fully exhausted all available administrative remedies on the precise claims raised in this action.

**PROPER DEFENDANTS**

The court has reviewed all plaintiff's filings to determine whether or not he names proper defendants and alleges the requisite  personal participation by each, as directed in the court's prior order.  Plaintiff addresses this deficiency mainly in his "Motion to Amend Claim" (Supplement) (Doc. 9), where he alleges:

1.   The "medical staff" at JCADC were given "his medical background and other intake information."

2.   He "complained to nurses on Dec. 8th to Dec. 15th, 2003" at JCADC about his ears bothering him; and he "filled out a medical request" and grievances during this time.

3.   On December 15, 2003, before leaving the JCADC for the Neosho County Jail, he "informed officers of (his) condition," but nothing was done.

4.   Upon arrival at the Neosho County Jail he "informed
     officers of (his) condition," but was told there
     were "no medical staff members at the facility,"
     and he would have to be returned to JCADC.  Medical
     request forms were filled out, and sent to JCADC on
     December 16, 2003.

5.   He "asked daily to see a doctor or go to the
     hospital," but "Neosho said" it was up to "JoCo and
     PHS to ok treatment," and JoCo had not replied.
     The pain was unbearable by December 23, 2003.

6.   On December 24, 2003, he was taken back to JCADC
     "for alleged misconduct" and appeared before a
     review officer.  He asked "the review officer and
     staff" to let him see a doctor, but they denied him
     emergency care.   He "filled out more medical
     requests to see an E.R. doctor or In-house with
     P.H.S." He asked "officers" daily to see a doctor,
     but they denied him, telling him "to wait for Dr.
     Gamble."

7.   He "finally saw the doctor . . . at the end of
     December, 2003."

Plaintiff summarily alleges he asked "Jo.Co. officers, Neosho
Co. officers, PHS staff members for emergency care," he did not
receive proper care, the doctor took too long to provide care,

and he was denied emergency care by "all defendants" and suffered "a great deal" because of their neglect.

In his "Motion to Amend" (Doc. 9), plaintiff does not name any nurse, jail official, staff member, or doctor (other than Dr. Gamble) as a defendant to be added in this case. His allegations that unnamed nurses, jail officials, and staff members denied his requests for emergency medical care do not amount to naming a person as a defendant and alleging acts showing personal participation by that individual. The only named defendants in this action remain JCADC, Neosho County Jail, Prison Health Services, and Dr. Gamble.

**COUNTY DEFENDANTS**

Plaintiff seeks relief from the JCADC, Neosho County Jail, and PHS in the form of monetary damages only. He was informed in the court's prior order that to recover from these entities, which are government agencies, he must identify a county "policy" or "custom" and allege how it directly caused his injuries.

As the Tenth Circuit has stated, under 42 U.S.C. § 1983 a local government may be held liable for the constitutional violation of its employees only when employee "action pursuant to official municipal policy . . . caused a constitutional tort." Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d

584, 592 (10th Cir. 1999), *quoting* <u>Hollingsworth v. Hill</u>, 110 F.3d 733, 742 (10th Cir. 1997); <u>see also</u> <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 692 (1978)(Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights."); <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307 (10th Cir. 1998)(A municipality "may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees"); <u>Ledbetter v. City of Topeka, Kansas</u>, 318 F.3d 1183, 1189 (10th Cir. 2003), *quoting* <u>Camfield v. City of Oklahoma City</u>, 248 F.3d 1214, 1229 (10th Cir. 2001)(to hold county liable, plaintiff must show that "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."); <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385, 389 (1989)("It is absolutely necessary to show that 'the "execution of the government's policy or custom . . . inflict[ed] the injury" [in order to hold a] municipality . . . liable under § 1983."); <u>Smith</u>, 216 F.Supp. at 1223-24. Therefore, "to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link

between the custom or policy and the violation alleged." <u>Anaya</u>,
195 F.3d at 592, *quoting* <u>Hollingsworth</u>, 110 F.3d at 742.

Plaintiff does not describe any official policy or custom
at the jails governing inmate requests for medical treatment.
Nor does he allege any connection between the alleged delay in
his medical care and an official county policy.  Plaintiff's
allegations concern only his individual experience.  Allegations
of a single instance of unconstitutional activity are generally
insufficient to assign liability to a municipality.  Plaintiff
alleges no additional facts in his Motion to Amend which
adequately tie the alleged violation of the Eighth Amendment to
deliberate indifference on the part of either county.  Thus, the
county defendants are not proper parties and must be dismissed
as a matter of law.


**<u>DEFENDANT DR. GAMBLE</u>**

Plaintiff's remaining claim to be considered is for money
damages against Dr. Gamble.  To the extent plaintiff is alleging
medical malpractice, he does not state a claim under 42 U.S.C.
1983, because medical malpractice does not violate the Eighth
Amendment.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).
Thus, plaintiff's only claim against Dr. Gamble is for cruel and
unusual punishment.  The court turns to the question of whether
or not plaintiff has sufficiently pled personal participation on

the part of Dr. Gamble as directed in its prior order.

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," is made applicable to the states by the Fourteenth Amendment. See Robinson v. California, 370 U.S. 660, 666 (1962). The Eighth Amendment requires that inmates receive adequate medical care. See Estelle, 429 U.S. at 97. To establish an Eighth Amendment violation, an inmate must show that defendant prison officials were deliberately indifferent to a "serious medical need." "Deliberate indifference" involves both an objective and a subjective component.

The objective component is satisfied if the alleged deprivation is "sufficiently serious." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock, 218 F.3d at 1209, quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999); Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). A delay in providing medical treatment is not actionable unless it is occasioned by "deliberate indifference which results in substantial harm." Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); Hunt, 199

F.3d at 1224, *quoting* Farmer, 511 U.S. at 847.  The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.  Oxendine, 241 F.3d at 1278.  Plaintiff's allegations of suffering unbearable pain over time and permanent hearing loss, if proven, could satisfy the objective component.  Mata v. Saiz, 427 F.3d 745, 755 (10th Cir. 2005); Sealock, 218 F.3d at 1209.  It follows that this component is adequately pled.

However, in addition to proving an objective risk of serious harm, the plaintiff must allege and prove defendant Gamble had a culpable state of mind known as "deliberate indifference."  Farmer, 511 U.S. at 834.  This subjective component is satisfied if the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and drew that inference.  Farmer, 511 U.S. at 837; Garrett v. Stratman, 254 F.3d 946, 949-50 (10th Cir. 2001); Smith v. Board of County Com'rs, 216 F.Supp.2d 1209, 1221-22 (D. Kan. 2002).  In other words, Dr. Gamble must have known of and disregarded an "excessive risk to (plaintiff's) health or safety."  Sealock, 218 F.3d at 1209, *quoting* Farmer, 511 U.S. at 837.  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs, or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment

once prescribed." <u>Estelle</u>, 429 U.S. at 104-105.

The court finds the subjective component of plaintiff's cruel and unusual punishment claim is not sufficiently alleged with respect to defendant Gamble. Plaintiff has not alleged any facts, which if proven, would establish that Dr. Gamble was personally deliberately indifferent and therefore had a "sufficiently culpable state of mind." <u>Farmer</u>, 511 U.S. at 837; <u>Craig v. Eberly</u>, 164 F.3d 490, 495 (10th Cir. 1998).

Plaintiff argues defendants should not have delayed his treatment, but should have provided immediate medical care. At a county jail without a doctor on site full-time, a medical emergency may typically be identified, in the first instance, by trained jail officials or nurses. According to plaintiff's first request for medical care his complaint was handled by a nurse the day after he complained of bad allergies, ear pain and fluid (see footnote 1 <u>infra</u>). In addition, according to plaintiff's own allegations, he was examined by Dr. Gamble within 3 weeks, during which time his pain worsened and he continued complaining to nurses and jail officials. During this same time he was twice transferred between the two county jails.

Plaintiff's allegations are that nurses and jail officials, rather than Dr. Gamble, ignored his requests for medical attention. The failure of jail officials and nurses to take plaintiff to receive emergency care is not shown to

constitute deliberate indifference on the part of Dr. Gamble. The facts alleged by plaintiff do not establish an affirmative link between Doctor Gamble and any jail official's or nurse's alleged failure to immediately recognize or act upon plaintiff's need for emergency medical attention.  Dr. Gamble cannot be held liable based upon some other person's failure to recognize or properly handle an emergency.  There are simply no facts alleged indicating Dr. Gamble was personally involved with plaintiff's need for medical care prior to seeing him for the first time the "end of December."  Moreover, plaintiff's allegations indicate that once he was able to see Dr. Gamble, he received medical care from him.

Furthermore, plaintiff makes no allegation that Dr. Gamble was aware plaintiff was seriously in need of medical attention prior to his appointment.  Plaintiff provides no evidence whatsoever that any person with the authority to do so ever classified his case as a medical emergency.  Plaintiff alleges no facts showing Dr. Gamble was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to plaintiff.  See Farmer, 511 U.S. at 837.  Plaintiff's allegations that he suffered permanent damage and should recover $100,000 for future medical expenses are completely conclusory and not supported by any factual allegations.  In sum, plaintiff does not allege facts which if

proven would establish that Dr. Gamble personally failed to take reasonable steps in providing medical care to him.

**STATUTE OF LIMITATIONS**

It appears plaintiff's claim is based upon the alleged delay in medical treatment from December 8, 2003, until "the end of December" when he saw Dr. Gamble.  The statute of limitations for filing a civil rights complaint is two years.  Plaintiff mailed his complaint to this court on December 19, 2005.  It follows that the statute of limitations has expired with respect to any actions or inactions on the part of defendant Gamble taken prior to December 19, 2003.

For all the foregoing reasons, the court finds this action should be dismissed, upon screening, for failure to state a claim pursuant to 28 U.S.C. 1915A.

**IT IS THEREFORE ORDERED** that plaintiff's second motion for appointment of counsel (Doc.7 ) is denied, and plaintiff's motions for leave to proceed in forma pauperis (Docs. 2 & 5) are denied as moot.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief denied for failure to comply with the court's order and for failure to state a claim.

**IT IS SO ORDERED**.

Dated this 1st day of March, 2006, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge